NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

—————————————————
                                :

NESTOR LORENZO, Individually and as  :
Executor of the Estate of Margarita Lorenzo :     Civil Action No.  06-cv-1682(PGS)
deceased,                              :

         Plaintiffs,            :

            v.                :

                              :          **OPINION**

ALFRED SEELEY, RIGAL         :
CONSTRUCTION, INC., MARTIN   :
MARTINETTI, Individually and as Building:
Official of the City of Union City, ALEX  :
VELAZQUEZ, Individually and as Building :
Inspector of the City of Union City and THE:
CITY OF UNION CITY,           :

         Defendants.        :
—————————————————:

      This matter comes before the Court on Defendants' motion for summary judgment.  Plaintiff, on behalf of himself and his mother's estate, claims that a building contractor Rigal Construction and its principal, Seeley (collectively "Rigal") negligently and purposely breached a contract for home improvements on Plaintiff's Union City, New Jersey home ("Residence").  This relatively straight forward construction claim has morphed into a civil rights action.  Plaintiff alleges that defendants City of Union City, the Union City Property Maintenance Inspector, Velazquez, and the Union City Construction Code Official, Martinetti violated a sundry of Plaintiff's civil rights.

Procedural History

On December 22, 2005, Plaintiff, individually, and as executor of the Estate of Margarita Lorenzo, filed a Complaint in the Superior Court of New Jersey, Hudson County. The Defendants timely removed this matter to this Court pursuant to 28 U.S.C. § 1331, as the Complaint, alleging constitutional violations, sought relief pursuant to 42 U.S.C. § 1983.

On or about April 20, 2006, the Defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) in lieu of filing an answer. On December 1, 2006, oral argument was held at which time the Defendants' application was denied without prejudice in order to allow Plaintiff one final opportunity to articulate a viable claim. Plaintiff filed an Amended Complaint on December 8, 2006.

The Defendants renewed this motion to dismiss on December 18, 2006. Thereafter, on or about May 16, 2007, following a settlement/status conference, this Court denied the motion to dismiss.  The Court ordered limited discovery on the issue of qualified immunity as applied to defendants Martinetti and Velazquez.  Such discovery was completed (Plaintiff Lorenzo was deposed; but Plaintiff elected not to conduct any discovery of Defendants) and now Defendants move for summary judgment.  As such, this motion as it applies to Union City is denied until discovery is completed with regard to the municipality.

Facts

On or about September 10, 2003, Margarita Lorenzo with the help of her son Nestor Lorenzo, entered into an agreement with Rigal, whereby certain repairs and home improvements were to be undertaken at the Residence.  On or about October 19, 2003, Rigal obtained a construction permit from Union City and  work on the residence commenced.

Following the commencement of construction, Plaintiff became dissatisfied with the work performed by Rigal. Indeed, there were several verbal altercations concerning the workmanship and conduct of the construction. Although the work was purportedly incomplete, Plaintiff and/or his mother paid Rigal the entire contract price to rid themselves of the allegedly substandard contractor. Rigal vacated the premises, and at some point thereafter, Plaintiff complained about Rigal to the Defendants[1]. From this point forward, plaintiff has been at odds with Martinetti and Velazquez. According to Plaintiff, Martinetti and Velazquez would not speak to him about permit issues for a long period of time. Plaintiff contends that Martinetti and Velazquez were unresponsive to his various requests. Lorenzo testified:

> Q.    And what needs to be done in your estimation to fix the work
>       that Mr. Seeley did?
>
> A.    That's what the inspectors have to come in and find out and
>       tell me about it. Or, I don't know that to tell you, somebody
>       has – I'm not, how you say, a mason or plumber. I have
>       certain knowledge, very vague, but I don't know about codes
>       and the way it has to be done. I know they screwed up to the max,
>       but I'm not anybody to tell you well, I need this, this, and this
>       and that. They are supposed to tell me (T 61, 13-23).

Sometime in the autumn of 2003, Plaintiff reported Martinetti and Velazquez to the Department of Community Affairs (DCA) about his situation, as well as some unauthorized work allegedly being performed at his neighbor's house. On December 22, 2003, two inspections occurred – one on the Residence, and the other on his neighbor's house. With regard to the inspection of the Residence, two unidentified people visited the Residence, took a cursory review of the work; and

---

[1]    In the Complaint, Plaintiff names Rigal and its principal, Seeley as defendants, it is unclear whether they have been served. For certain, default has not been entered.

thereafter, Martinetti issued a Notice of Violation and Order to Terminate Work and Notice and Order of Penalty (Notice to Terminate).

The Notice to Terminate was issued for a violation of the Uniform Construction Code, namely "perform[ing] interior work beyond the scope of original permit . . . working above and beyond approved plans," and it was addressed to both Rigal and Lorenzo.   The Notice to Terminate required Rigal and/or Plaintiff to rectify the issue within approximately four weeks (January 19, 2004), and imposed a fine of $500, and an additional fine if $100 per week for each week beyond the compliance date in which the violation remained uncured.   The Notice to Terminate set forth an appeal process which states in part:

> If you wish to contest the validity of the above action, you may request a hearing before the Construction Board of Appeals of the:
>
> HUDSON COUNTY BOARD OF APPEALS
>
> within 15 days of receipt of these orders.  The application to the Construction of Appeals may be used for this purpose. Your application for appeal must be in writing, setting forth your address and name, the address of the building or site in question, the permit number, a specific sections of the regulations in question, and the extent and nature of your reliance on the regulations, and if necessary, a brief statement setting forth your position and the nature of relief sought by you.  You must also append any documents that you may consider useful. The Fee for an appeal is $100 to be forwarded with your application to the Board of Appeals office at:
>
> 595 NEWARK AVENUE JERSEY CITY NJ 07302

The Notice to Terminate envisioned that Rigal and/or Plaintiff may have "questions concerning the matter," and in that event, Martinetti's telephone number was provided for their convenience.  The Notice to Terminate clearly states that Plaintiff had 15 days in which to appeal; but the Notice to Terminate contained the wrong address for the Board of Appeals. Plaintiff contends that by the time

he secured the correct address in Secaucus, the appeal period expired.

On the same date, DCA agents reviewed the status of the inspections at Plaintiff's neighbor's house.  Evidently, the DCA inspector found that the permits and inspections were "in order." The DCA representative noted:

> Finally, on 12/22/03, this writer and two subcode officials from our office review the said permits and inspections at 4523 Brown St. in the Union City Construction Office. Everything was in order. We also went to 4523 Brown St. And our officials reinspected the building work that had been done. Again everything was in order.

Since the violation cited in the December 22, 2003 Notice to Terminate was not rectified within four weeks, the Building Inspector took action against Rigal, by way of issuance of a summons on January 22, 2004.  According to the Complaint,

> To the dismay of plaintiff on 1/22/04 the building inspector of the municipality issued for the first time a summons against Rigal Construction Inc. for failure to comply with the order of the building department issued on 12/22/03, a court date was set for 3/25/04 but on 3/11/04 Rigal and/or Alfredo paid a fine of $250.00, his license was perfunctory suspended (only short period of time), but no serious disciplinary action as is required was taken against his license (revocation) and not action in respect to finalize and correct the disgraceful work performed by him, as is required by Code and Ordinance.

On February 6, 2004, the Plaintiff complained to the New Jersey Department of Law and Public Safety (Attorney General) about Martinetti and Velazquez.  The exact nature of the complaint is unknown; but the Complaint avers:

> During this same time period Plaintiff complained to the said Alex and Martinetti about work that he believed was performed in violation of the building code and ordinances being concluded by a neighbor and that this complain and his many requests to have his property inspected and Alfredo property punished he had been ignored by the building department. On 2/6/04 plaintiff complaint to

5

the State of New Jersey Department of Law and Safety about the
conduct of the defendants Martinetti and Alex in reference to his
complaints against Rigal and Alfredo and the lack of response or
effective response by the said official.

As a result of the Complaint to the Attorney General's Office, Lorenzo claims that Mr. Martinetti

was fined and others were fired.  He stated:

Q.    Do you know if any kind of penalty was imposed against Mr. Martinetti?
A.    I heard that there have been people fired, that there have been fines issued to
      the Building Department that the owner of the house in question that I
      complained about was heavily fined.  (T 52, 1-8)

***

Q.    It's your understand that some fines were levied and some people were fired?
A.    yes, sir, I heard that, I don't have any paperwork (T 54, 28 through T 55, 2).

At some point in time, Velazquez started referring to plaintiff as a "f...ing rat". More

specifically, at deposition, plaintiff stated that Velazquez had a "habit" of calling him by that name.

As of this date, the violation set forth in the Notice to Terminate remains unresolved.

In May, 2007, the Court required counsel to confer and to communicate to Plaintiff precisely

what must be submitted to Union City in order to complete the construction at the Residence.  At

oral argument, Defendant's counsel advised that he had sent two requests to Plaintiff's counsel

attempting to set up a meeting to review the issue, and Plaintiff's counsel did not respond.

Unbeknownst to counsel, Lorenzo hired a contractor who filed for a building permit in August 2007.

Lorenzo stated at the depositions:

A.    Recently, yes.

Q.    What did he say?

A.    I brought him to the house, I show him the problems in the
      back room, in the basement, in the plumbing.  And maybe

6

about week ago, I think, yeah, about a week ago, I submitted to the – through this contractor requests for permits for this contractor to find out –

\*\*\*

Q.     And this contractor came and looked at your property and you requested him to – did you request him to to the Building Department of Union City to apply for permits.

A.     I told him I have a problem here, the prior contractor screw me, I need to repair what he did wrong, not only what he did wrong but what he left on repair. And I need to bring this to the proper shape to get the proper C.O.'s and then I personally went to the Building Department, I request for an application. I gave it to the contractor, filed it out, brought it back.

Q.     What kind of application?

A.     For the permit to do whatever he has to do to find out what the violations are, what has to be done to correct the problems.

Q.     Okay, an application to have a new contractor work on the house?

A.     Yes.

At present, the status of the application is unclear[2].


II.

Discussion

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party

demonstrates that there is no genuine issue of material fact and the evidence establishes the moving

party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

---

[2]     Defendants argue that the Building Permit Application should not be considered because it was untimely filed with the Court. There is no prejudice to defendants since it was referenced in the deposition of plaintiff and the transcript was timely filed with the Court. Plaintiff has not alleged any constitutional violations based on the status of the August 2007 permit application.

(1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgement.  *Anderson*, 477 U.S. at 247-48.  If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no reasonable jury could find for him, summary judgment is appropriate."  *Alevras v. Tacopina*, 226 Fed. Appx. 222, 227 (3d Cir. 2007).

With regard to this motion for summary judgment, the Court must disregard unsupported

allegations that have no factual basis.  There are at least four unsupported allegations.

First, Lorenzo avers that his civil rights were violated because Martinetti and Velazquez failed to revoke Rigal's contractor's license upon his demand in January, 2004. At depositions, Lorenzo acknowledged that he sought to have "Rigal and Alfredo [Seeley] licenses be revoked that they be fined and that they be obligated and commanded to finalize the work at plaintiff's property in code observant proper manner."  (Count IV, para 15).  Alternatively, Plaintiff pleads that Rigal was cited for issues related to his license, but the penalties imposed by the Municipal Court of Union City were insufficient, and as a result, he complained to the Attorney General (See Notice to Terminate).  There is no proof that the fine imposed against Rigal was inconsistent with any statute, building code provision, or municipal ordinance.  In addition, it appears that the Municipal Court of Union City issued the fine, hence, there is no connection between actions of Martinetti and Velazquez and the penalties imposed upon Rigal.

Second, Plaintiff avers in paragraph 15 that Velazquez and Martinetti failed to inspect his residence, and said failure violated his civil rights.  More specifically, Lorenzo contends he was left "in limbo" because the city failed to inspect.  However, Plaintiff admits that two unidentified persons visited the residence on December 22, 2003 and immediately thereafter the Notice to Terminate was issued.  With regard to the "lack of inspection" allegation, there is no competent evidence which remotely suggests that the site visit by the two individuals on December 22, 2003 did not constitute an inspection.  Lorenzo has no expertise as a construction inspector.  In addition, his assertion that Martinetti and Velazquez refused to inspect the premises is unsupported by competent testimony. The Notice to Terminate sets forth the date of inspection, and the reason why it was issued.  In addition, Plaintiff concedes two agents from the city were at the residence.  Hence, the allegations

concerning a failure to inspect are dismissed.

Third, in Count IV, para. 16 (as best as it can be understood) it alleges, inter alia, that plaintiff complained to DCA and/or the Attorney General's office about unauthorized construction work being performed at his neighbor's house.  Despite Plaintiff's contention, the only competent evidence is that DCA inspectors reviewed the matter on December 22, 2003, and found the work as well as the permits to be satisfactory. The Court will not consider this unsupported allegation.

Fourth, Plaintiff contends Martinetti was fined and others were fired due to the alleged unauthorized work being performed at his neighbor's house.  However, Plaintiff at depositions, concedes his allegation is based upon a statement by a third party and and he "does not have the paperwork" to support same.  Hence, the only proof is a hearsay statement by an unidentified third party.  Plaintiff's counsel does not argue that this statement falls within any exception to the hearsay rule,  and Plaintiff did not undertake any discovery to determine whether there is any support for this allegation. Fed. Evid. R. 80-1; *Acre v. U-Pull-it Auto Par ts, Inc.* 2008 U.S. Dist. LEXIS 10202, n. 11 (E.D. Pa. 2008).  In *Acre*, the Court held  "While, '[h]earsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present that evidence through direct testimony, . . . the mere possibility that hearsay statement will be presented in form of admissible evidence at trial does not warrant consideration of hearsay evidence at summary judgment stage.' " *Id.* The Court declines to consider such an amorphous statement here.

By eliminating those allegations, there are three major facts which remain. They are: (a) the continual refusal of Martinetti and Velazquez to inform Plaintiff of those precise actions that plaintiff must undertake to resolve his permit issues; (b) the incorrect address of the Board of Appeals set forth in the Notice to Terminate; and (c) Velazquez's habit of referring to plaintiffs as a f...ing rat.

It is based on these facts which the Court considers Plaintiff's civil rights claims.

"The first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (*citing Graham v. Connor*, 490 U.S. 386, 394 (1989). To establish a viable § 1983 claim, a plaintiff must demonstrate that "the conduct complained of was committed by a person acting under color of state law" and that the "conduct deprived the plaintiff of his rights, privileges and immunities secured by the Constitution or laws of the United States." *Kost v. Kozakiewicz,* 1 F. 3 d 176, 184 (3d Cir.1993) (*quoting Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by, Daniels v. Williams*, 474 U.S. 327 (1986)). The second step requires plaintiff to show that the statutory or constitutional right abridged must be one "of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996). Below the Court analyzes each of Plaintiff's claims utilizing this standard.

<u>Substantive Due Process</u>

In order to find that substantive due process has been violated, plaintiff must prove that Martinetti's and Velazquez's actions shocked the conscience. *United Artists Theatre Cir., Inc. v. Township of Warrington, PA*, 316 F.3d 392, 399 (3d Cir. 2003); *Papayia v. City of Union City*, Slip Copy, 2006 WL 2096082 at *4 (D.N.J. July 27, 2006). The doctrine of substantive due process "does not protect individuals from all [governmental] actions that infringe liberty or injure property in violation of some state law." *PFZ Properties, Inc. v. Rodriguez,* 928 F.2d 28, 31 (1st Cir.) *(quotation and citations omitted), cert. granted,* 502 U.S. 956, (1991)*, and cert. dismissed,* 503 U.S. 257 (1992). Thus, decisions regarding the grant or denial of building permits, even where tainted by "bad faith," or "improper motives" do not make out a substantive due process claim. *See United Artists*, 316 F.3d at 402. One court held that "A mere bad faith refusal to follow state law in such local

11

administrative matters simply does not amount to a deprivation of due process where the state courts are available to correct the error."  *Lindquist v. Buckingham Tp.*, 106 Fed. Appx. 768, 782 (3d. Cir. 2004) *quoting Chiplin Enterprises v. City of Lebanon*, 712 F.2d 1524, 1528(1st Cir. 1983); *Cherry Hill Towers LLC v. Twp. of Cherry Hill*, 407 F.Supp.2d 648, 655 (D.N.J.2006).

Although Velazquez and Martinetti are not model public servants; their actions do not shock the conscience.  Martinetti issued the Notice to Terminate, and the Notice to Terminate succinctly stated that the work performed exceeded the work authorized in the permit.  It is not Martinetti and Velazquez's duty to resolve Lorenzo's problems with his contractor (Rigal).  Hence, the fact that Martinetti and Velazquez did not talk with Lorenzo is insufficient to establish a deprivation of substantial due process.

<u>Procedural Due Process</u>

Plaintiff further argues that his procedural due process rights were violated because the Notice to Terminate set forth the incorrect address for the Board of Appeals. With regard to the incorrect address, plaintiff testified:

> Q.      Did you ever attempt to file any kind of application with the Hudson County Board – Construction Board of Appeals with respect to the work done by Mr. Seeley or Rigal Construction?
>
> A.      Yes, I did.
>
> Q.      When was that?
>
> A.      It was around the time that this problem with Seeley was happening when he has the fine issued and we have the appearance at the court. I was trying to find out where to go to.
>
>          And I was given this address which shows here in P-3, 595 Newark Avenue, Jersey City, New Jersey.  I went there. Well, that's a huge place, the building itself, 595, and there is the other building, this is called the new building, the new

courthouse, there's another older building which is all part of the same conglomerate.

***

A.    I don't know. But it's right next to it, it's the old building.
      And I was running in these places floor by floor asking everybody about this
      office that they gave me for the Board of Appeals.

Q.    Okay, and what were you told?

A.    Well, I spent days going in back and forth, going back to the Building
      Department trying to find out, that nobody in here can tell me where this
      place was for weeks and days until somebody in one of the offices that I
      went to in the new building, 595, heard me kind of upset trying to find out
      where the place is.

Q.    And you eventually travel to the address of the Hudson County
      Construction Board of Appeals?

A.    Finally in this place that I'm telling you I was kind of upset and talking loud,
      somebody overheard me and said well, this is not here, you have to go
      someplace, I think it was in Secaucus.

Q.    And did you go there?

A.    Huh?

Q.    Did you ever go there.

A.    Yeah.

Q.    And what happened when you went there?

A.    Again, I was bounced back to Union City Building Department.
      And by that time I understand that there was a time limit for me to do the
      appeal.  And that was another thing that the Building Department did by sending
      me to the wrong place and by not telling me where to go, this time lapsed and I lost
      the appeal (T 59 - 60).

Defendants do not deny the wrong address was given to Plaintiff, but argue that Count VI of the

Amended Complaint is limited to the failure to advise plaintiff that an appeal had to be filed within

13

15 days of the Notice to Terminate of Violation. Hence, the incorrect address is not pled, and the Court should not consider same. The Complaint states in pertinent part:

> By not allowing plaintiff to apply and by refusing to accept any permit application for construction, as well as refusing to inspect and proper notice of detail violations, the defendants Martin Martinetti and the City of Union City violated the procedural rights of plaintiff the Building Code since this notice was the first basis to start an appeal and it was not communicated to plaintiff that he had a right to appeal the Board of Construction within 15 days of the decision as the building code provides.

Reading the complaint as a whole, the above language is sufficiently broad to include the allegation about the wrong address. An overly restrictive reading of a complaint is inconsistent with the mandate that "pleadings shall be so construed as to do substantial justice." Fed. R. Civ. P. 8(f); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513-14 (2002) (pleadings should be construed liberally).

The Plaintiff also argues that Martinetti and Velazquez would not discuss the Notice to Terminate despite his frequent requests. In addition, plaintiff avers that Martinetti and Velazquez refused to discuss the permit with him even though he had contacted them frequently; or to allow another contractor to finish the work. Lorenzo stated at depositions:

> No, because of what I just told you, because whenever I went there in person and I requested to get permits and to allow somebody else to do the preliminary to find out what was wrong, Mr. Martinetti was telling me that I had to use Mr. Seeley. (T. 69, 20).

Generally, the Fourteenth Amendment forbids state actors from depriving persons of life, liberty, or property without due process of the law. U.S. Const. amend. XIV, § 1. *Gardner v. McGroarty*, 68 Fed. Appx. 307, 310 (3d Cir. 2003) (citing *Robb v. City of Philadelphia*, 733 F.2d

14

286, 292 (3d Cir. 1984); *Bd. of Regents v. Roth*, 408 U.S. 564, 569-72, 92 S.Ct. 2701 (1972)).  Here, there is a violation of a statute, the Uniform Construction Code.  The statutory scheme provides an appeal process.  *See*, N.J.S.A. 52:27D-127.  Specifically, the Act provides "when an enforcing agency refuses to grant an application or refuses to act . . . or . . .  makes any other decision, "pursuant to this act or the code."  The statute affords an owner, or his authorized agent, the opportunity to "appeal in writing to the county, municipal or joint board."  N.J.S.A 52:27D-127(b). In accord with this provision, the Notice to Terminate sets forth the appeal process. The issue here is whether that Notice to Terminate was adequate. The Court finds that the Notice to Terminate and the actions of Martinetti and Velazquez were inadequate in two respects. First, the Notice to Terminate contained the wrong address of the Board of Appeals.  Hence, it was misleading.  Second, since the Notice to Terminate included telephone numbers for recipients to call if there are questions, it contemplated that municipal officers will reasonably communicate with recipients about the Notice to Terminate. Obviously, the building code is a complex set of arcane rules.  The telephone communication is additional layer of protection to make certain homeowners have a fair opportunity to be heard, and to understand the nature of the violation. The refusal by Martinetti and Velazquez to answer Plaintiff's question is in breach of this duty.

"[T]he qualified immunity defense shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996). Here, the duty to communicate as envisioned by the telephone number provision is clear. Velazquez and Martinetti's refusal to do so is in breach of this obligation pursuant to the Uniform Construction Code, and a reasonable person would recognize same.   In addition, Martinetti and Velazquez had

a clear duty to make certain that the correct address for the Board of Appeals was on the Notice to Terminate.  As such, the defense of qualified immunity is not available for this breach of procedural due process.

<u>Equal Protection</u>

Plaintiff alleges a denial of equal protection by Martinetti and Velazquez.  The Complaint alleges:

> The City of Union has a history of unreasonable enforcements of the city and ordinances and codes, the use of denial of permits the arbitrary and unreasonable denial of transfer of licenses and the misuses of the enforcement process, the violations of equal protection under the law, by which other citizens of Union City are allowed to apply for permits, issued permits and allowed to select their const construction company.

The plaintiff provides no proof of same.  A plaintiff may assert an equal protection claim in one of two ways when (1) he is a member of a protected class similarly situated to members of an unprotected class and was treated differently from the unprotected class *(see Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir.1990)); or (2) he belongs to a "class of one" and was intentionally treated differently from others similarly situated without any rational basis. *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). *Cataldo v. Moses*, 2005 WL 705359 at *13 (D.N.J. March 29, 2005).  Plaintiff has failed entirely to assert  that he is either a member of a protected class or that he belongs to a class of one. There are no facts in the record establishing that Plaintiff was treated different from others similarly situated. The only discussion of others within the City of Union are his neighbors, who according to Plaintiff were fined and the violations addressed.  As a consequence the equal protection clause must be dismissed. *Harris v. New Jersey*, No. 03-2002,

2008 WL 141503, *10-11 (D.N.J. 2008)(dismissing the equal protection claim for failing to establish either protected status or class of one).

IV.

Within Count IV, para. 22 there is a first amendment claim alleged.  Although inartfully framed in the Complaint, the Plaintiff clearly articulates a retaliation claim against Martinetti and Velazquez. At depositions, Plaintiff  stated:

> A.   Of course.  It's the obstruction that I had from the Building
>        Department since the building – retaliation for my complaints
>        to the State.

In order to establish a claim for retaliation, plaintiff must demonstrate (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006);  See e.g., *Phyllis Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005). The first factor is a question of law; the second factor is a question of fact. *Curinga v. City of Clairton*, 357 F.3d 305, 310 (3d Cir. 2004).  *Herman v. Carbon County*, 2007 WL 2775162, *1, No. 05-2311 (3d. Cir. 2007); *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir.2006) (*citing Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003)).

In addition, the retaliatory action must meet a "deterrence threshold".  *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir.2006).  That means the retaliatory action must be of such a nature that it would substantially affect a person of ordinary firmness. In this case, the acts of retaliation are that Martinetti and Velazquez would not communicate with Plaintiff, and Velazquez's habitual reference to Lorenzo as a "f....king rat" after his complaint to the State.

Defendants concede that Plaintiff has engaged in a protected activity when he filed

17

complaints with the State regarding the conduct of Martinetti and Velazquez.  The right to speak openly about government action lies at the heart of the First Amendment. This includes complaints about government officials.   *McCann v. Winslow Tp.,* 2007 WL 4556964, *5 (D.N.J. 2007).

Defendants maintain that the allegedly retaliatory actions are insufficient to raise a First Amendment Claim.  The Court disagrees for several reasons. First, rat in slang has a pejorative connotation which means "to desert one's companions . . . to act as a stool pigeon".  *Webster's Unabridged Dictionary 2ⁿᵈ Edition*, (1979).  Since Velazquez had a habit of calling him "a f...ing rat", plaintiff alleges a consistent practice as opposed to a single isolated act.  The statement above is offensive to a person of ordinary firmness.   In addition, and it is uncontroverted, Martinetti and Velazquez did not discuss the matters with Plaintiff after the complaint to the State.  This also would enrage a person of ordinary firmness.   Defendants rely on a Third Circuit case.  In *R.C. Maxwell*, the Court held that a borough that sent letters to a landowner encouraging, but not threatening, intimidating, or coercing, to terminate its leases with a billboard owner did not violate the billboard owner's First Amendment rights. *R.C. Maxwell Co., v. Borough of New Hope*, 735 F.2d 85, 89 (3d. Cir. 1984).  Unlike the *R.C. Maxwell* case,   Plaintiff here has alleged that the Defendants affirmatively acted to retaliate against him, as opposed to *R.C. Maxwell* where the officials were utilizing their power of persuasion.  In this Circuit, the threshold to assert a First Amendment claim is relatively low. See, *Citizens for a Better Lawnside , Inc., v. Bryant*, No. 05-4286, 2007 WL 1557479, *5 (D.N.J. 2007) In *Citizens*, the District Court denied summary judgment on a First Amendment retaliation claim finding that the alleged retaliatory action, conducting an unauthorized background check, was not de minimis. In either case, the Third Circuit has found 'an act of retaliation as trivial as failing to hold a birthday party for a public employee,' if intended to punish

18

her for exercising her free speech rights may be actionable. *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006).    In this case, the retaliatory actions are substantial and in direct reprisal for Plaintiff's complaints to State officials.  In addition, there is no doubt that any reasonable person would have known that such foul language and failure to communicate in retaliation for complaints to the State were repugnant to the First Amendment.

The motion to dismiss Plaintiff's claims regarding substantial due process and equal protection is granted. The motion to dismiss Plaintiff's claims regarding procedural due process and retaliation for exercise of free speech are denied. The motion for summary judgment by the City of Union City is denied without prejudice.

s/Peter G. Sheridan
PETER G. SHERIDAN, U.S.D.J.

April 7, 2008

19